**E-FILED**
Thursday, 10 December, 2015  02:27:05 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

COREY RAMON PASTORIZA,              )
                                    )
    Plaintiff,                      )
                                    )
       v.                           )        Case No.   15-cv-1174
                                    )
KEYSTONE STEEL & WIRE, et. al.,     )
                                    )
    Defendants.                     )

# O P I N I O N  &  O R D E R

This matter is before the Court upon the Joint Motion To Dismiss Plaintiff's Pro Se Civil Rights Amended Complaint (Doc. 18) brought by the Defendants. The plaintiff in this civil action is Corey Ramon Pastoriza ("Plaintiff"). The defendants are Keystone Consolidated Industries, Inc. ("Keystone"), Ken Notaro ("Notaro"), Jeff Klokkenga ("Klokkenga"), Tim Heaton ("Heaton"), and "Supervisor Maxwell" ("Maxwell") (collectively "Defendants"). The motion is fully briefed and ready for disposition.  For the reasons stated below, the motion is GRANTED.

## BACKGROUND

### I.  Procedural History

Plaintiff filed this employment discrimination suit against his former employer and several individual supervisors on April 30, 2015. On July 31, 2015, Defendants moved the Court to require the Plaintiff to provide a more definite statement of the claims he sought to bring against them pursuant to Federal Rule of

Civil Procedure 12(e). That motion was granted and Plaintiff filed an Amended Complaint (Doc. 16) on September 28, 2015. Defendants filed the motion *sub judice* on October 13, 2015. Thereafter, Plaintiff filed a response brief that added significant factual detail not contained in the Amended Complaint. (*See* Doc. 22).[1]

## II.    Factual Allegations

Plaintiff claims to have suffered several forms of discrimination while employed by Keystone in Bartonville, Illinois. Plaintiff claims Keystone treated employees in a special program for felons re-entering society better than him and other employees not affiliated with the program. He alleges that these re-entry employees made sexual gestures, called him names and generally mistreated him, all while Keystone did nothing despite having knowledge of the mistreatment. He states he was sexually harassed and defamed by ten or more Keystone employees, including individual Defendants Norton, Heaton and Maxwell. He alleges his supervisors created false reports of his failure to adhere to the standards of his employment in a concerted effort to wrongfully discharge him. He seems to argue on

---

[1] Normally, the Court would confine its assessment of the factual allegations supporting a plaintiff's claims to only those allegations contained within the operative pleading. However, the Plaintiff here, a *pro se* litigant, has supplemented the factual allegations contained in the Amended Complaint with a narration of events contained in his responsive brief to the motion to dismiss. Seventh Circuit precedent is to allow the facts alleged by a *pro se* plaintiff in a brief in opposition to a motion to dismiss to be "considered when evaluating the sufficiency of a complaint so long as they are consistent [with] the allegations in the complaint." *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (citations omitted). Therefore, the Court will briefly recount the additional facts contained in the "Plaintiff's Responsive Motion To The Defendants' Affirmative Defenses To Dismiss The Plaintiff's Complaint" (Doc. 22).

the one hand he was wrongfully denied overtime hours yet on the other hand complains that he was assigned overtime hours. Plaintiff complains further that Keystone withheld personal contact information of its employees from him. The specific causes of action brought against Defendants are:

1. Age discrimination in violation of 29 U.S.C. § 621 *et. al.*;

2. Race, color, sex discrimination, sexual harassment/hostile work environment and retaliation in violation of 42 U.S.C. § 2000(e) *et. al.*;

3. Concerted activity, which in reality is nothing more than an attempt to appeal the NLRB's decision to not pursue an unfair labor practice charge against Keystone; and

4. Illinois common law claims of interference with contractual relations, defamation and intentional emotional distress.

In his responsive brief to the motion to dismiss, Plaintiff alleges he began working for Keystone in October 2012. He continues to allege that the re-entry hires were treated better than he and the other non-re-entry hires. (Doc. 22 at 3). He says the re-entry hires were a "racially-based group of federal ex-offenders". He never states what race these employees were, his own race, or how race accounted for a difference in treatment. At some point he apparently joined with other non-re-entry hires to complain about the re-entry hires receiving more overtime hours than them. He complains that three re-entry hires in particular received more overtime than him. Plaintiff identifies these workers by numbers in his pleadings. He provides no description of their race, color or age beyond the fact that they were

younger than him. As a result of his efforts, Plaintiff received more overtime but it was "forced overtime". He does not explain the significance of the term "forced".

Apparently his increased overtime led to a decrease in the overtime of the re-entry hires and they began to harass Plaintiff while his supervisors, Maxwell and Heaton, did nothing. In "weeks 43 through 52 of the year 2012 Keystone employees, including the re-entry hires, the Union representatives, his supervisors and others, called Plaintiff a "snitching b…", told him to perform sex acts, and announced their dissatisfaction of him by stating "I don't like weak ass homosexual[] acting n…". (Doc. 22 at 4). These employees allegedly also "played with their private parts" and blew kisses at Plaintiff. One re-entry hire somehow forced Plaintiff to work on more challenging equipment. Plaintiff alleges Maxwell and Heaton treated another re-entry hire better than Plaintiff because they shared "sexual interactions" with him.

Plaintiff missed a day of work on January 5, 2013. He alleges that he made clear to his hiring officials before he was hired in 2012 that he was going to have to miss that particular day because of a previously scheduled business meeting. He never attended that meeting but went to the emergency room with an ailment. On January 8, 2013 Plaintiff attended a meeting in which Klokkenga disciplined him. Apparently, Klokkenga and Plaintiff's individual supervisors rejected Plaintiff's assertion that he was sick and refused to give him a chance to produce a doctor's note. Keystone disciplined Plaintiff by having his probationary period of employment extended. Plaintiff says it was implied to him that he should set an example for the younger employees. After leaving the meeting, supervisor Heaton,

and Plaintiff walked back to their work area. Heaton asked Plaintiff questions about his age during the walk. The next day Heaton gave Plaintiff a back dated progress report despite having already received such a report on the last day of December.

The next day, January 10, 2013, Plaintiff was terminated. The reason given to him was that he threatened Heaton earlier. Plaintiff contacted the NLRB and filed a charge against Keystone. That charge was ultimately dismissed and unsuccessfully appealed. Thereafter, Plaintiff filed a complaint with the EEOC, and the EEOC declined to prosecute.

## LEGAL STANDARDS

In ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the challenged pleading must contain sufficient detail to give notice of the claim, and the allegations must "plausibly suggest that the [non-movant] has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard requires enough facts "to present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400,

404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545. Lastly, when a plaintiff pleads facts demonstrating that he has no claim, dismissal of the complaint is proper. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

## DISCUSSION

### I.     ADEA and Title VII Claims against Individual Defendants

Defendants first contend that the individual Defendants cannot be liable for violations of the ADEA and Title VII. Defendants are correct. In *Williams v. Banning*, the Seventh Circuit—whose pronouncements of law this court must follow—unambiguously held that individual supervisors in their individual capacities, do not fall within Title VII's definition of "employer" and thus no set of facts can be pled that will allow a factfinder to find the individual Defendants liable for violations of Title VII. 72 F.3d 552, 555 (7th Cir. 1995). The Seventh Circuit has also similarly foreclosed individual liability for supervisors alleged to have violated the ADEA. *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 n. 2 (7th Cir. 2001). Several district courts have followed *Horowitz* to the same conclusion. *E.g.*, *Cheng v. Benson*, 358 F. Supp. 2d 696, 699-700 (N.D. Ill. 2005) (finding a former employee's supervisor not liable under the ADEA in her individual capacity for allegedly discriminating against the former employee because of his age and collecting similar cases).

Plaintiff attempts to argue that the principal/agent relationship allows for the individual Defendants to be liable for the alleged violations of Title VII and the ADEA. Plaintiff misunderstands this relationship and its relation to Title VII and ADEA litigation. While an agent's actions that violate these statutes can and will render the <u>employer</u> liable when all the necessary conditions are met, the employer's violations of the statutes do not reciprocally render the individual supervising employees who committed the acts liable. This is so because only "employers" are liable under these statutes and employers are those entities or individuals who actually employ the employees. 42 U.S.C. § 2000e(b); 29 U.S.C.A. § 630(b). Here, Plaintiff alleges he was an employee of Keystone, not of any of the individual Defendants and therefore, his Title VII and ADEA claims against the individual Defendants cannot proceed.

## II.   Title VII Race, Color and Sexual Discrimination Claims against Keystone

The Title VII claims against Keystone, the employing entity, are cognizable because Keystone fits into the Title VII definition of an "employer." However, the claims are woefully insufficient to even raise an inference that Keystone engaged in racial, color or sexual discrimination against Plaintiff. A complaint must contain sufficient detail to give notice of the claim, and the allegations must "plausibly suggest that the [non-movant] has a right to relief, raising that possibility above a

'speculative level.'" *Concentra Health Servs., Inc.*, 496 F.3d at 776 (quoting *Twombly*, 550 U.S. at 555).

There is no need to engage in a long, drawn out analysis of Plaintiff's claims. There are simply no allegations that touch upon the race, color and sex of the Plaintiff, the re-entry employees or the individual supervisors. There are no allegations that anyone at Keystone ever even took notice of the Plaintiff's color, race or sex. The only inference that can be established from the Amended Complaint and the response brief is that Plaintiff was treated differently from employees in Keystone's re-entry program but the Plaintiff has not pled any factual details concerning Keystone's treatment of those employees vis-à-vis himself in regard to race, color or sex. He even concedes he was of the same race and color as the majority of re-entry employees. (Doc. 22 at 8). In short, Plaintiff has not pled anything that remotely links his treatment while employed at Keystone or his termination to his color, race or sex and so these claims fail as a matter of law.

## III.   Age Discrimination

To plead a claim of age discrimination, a plaintiff must allege facts that he is protected by the ADEA and he suffered a materially adverse change in terms or conditions of his employment because of his age. Although he failed to include any facts in the Amended Complaint supporting an ADEA violation occurred, in his response brief Plaintiff claims he was over forty years of age when the alleged discrimination occurred and that he was denied overtime hours because he was

older than the re-entry hires. (Doc. 22 at 7). However, he also claims he was forced to work overtime. (Doc. 22 at 7). His allegations make no sense. The Court is at loss to comprehend how one can, on the one hand, complain that one was being denied overtime while simultaneously complaining on the other hand that he was also forced to work overtime.

Plaintiff also mentioned (in his rendition of facts, not in his argument opposing dismissal) that it was "implied" to him that he should set an example for the other workers because he was the oldest while he was disciplined for taking a purportedly unauthorized day off. While this implication could serve as circumstantial evidence of age discrimination, Plaintiff does not complain that the discipline for missing work was the adverse employment action he suffered as a result of his age. Instead, he alleges that the discrimination he was subjected to on account of his age was the denial of overtime while being forced to work overtime. (Doc. 22 at 7). In any event, nowhere in his submissions to the Court does Plaintiff allege that younger employees took days off and faced no employment consequences while he did suffer an adverse employment action for his absence. Therefore, the Court finds that Plaintiff has failed to plead a viable claim of age discrimination under the ADEA.

## IV.    Sexual Harassment

Plaintiff alleges that he also suffered from sexual harassment. The Court interprets his claim to be a hostile work environment claim proscribed by Title VII.

9

He pleads that employees at Keystone made unwanted sexual gestures and statements towards him over the course of several weeks and that Keystone supervisors took no action to stop the harassment. Specifically, Plaintiff alleges that in "weeks 43 through 52 of the year 2012 Keystone employees, including the re-entry hires, the Union representatives, his supervisors and others, called Plaintiff a "snitching b…", told him to perform a sex act, and announced their dissatisfaction of him by stating "I don't like weak ass homosexual[] acting n…". (Doc. 22 at 4). These employees allegedly also "played with their private parts" and blew kisses at Plaintiff. He also claims the harassment was so bad that he would often cry and alienate himself from others at work.

A Title VII hostile work environment claim requires a plaintiff to allege the work environment was subjectively and objectively offensive, the plaintiff's gender was the cause of the harassment, the conduct was severe or pervasive, and there is a basis for employer liability. *See Orton-Bell v. Indiana*, 759 F.3d 768, 773 (7th Cir. 2014). If true, the Plaintiff's allegations suffice to make it plausible he was subjected to severe and objectively offensive conduct. However, in this Court's opinion, Plaintiff has failed to allege that his gender was the cause of the harassment. This may seem like a fine line to draw given the nature of the alleged conduct, but Title VII prohibits harassment on the basis of sex (and other prohibited classifications), it does not provide an honor code of workplace etiquette and civility. Plaintiff clearly alleges that he was subjected to harassment as a consequence of complaining about his treatment vis-à-vis the re-entry hires; not because he was a

10

man, or of any particular sexual orientation.[2] In short, Plaintiff's submissions to the Court contain factual allegations that do not allow the Court to conclude it is plausible Plaintiff was harassed because of his gender. Therefore, the claim must be dismissed.

## V.    Retaliation

"Pleading a retaliation claim under Title VII requires the plaintiff to allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) quoting *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). The protected activity refers to activity protected by Title VII such as reporting instances of discrimination, not unrelated statutes or other laws.  *See* 42 U.S.C. § 2000e-3(a).

Plaintiff claims he was retaliated against because 1) he was not an "REPH", which the Court takes to mean was a re-entry employee, 2) he organized with co-workers, 3) he consulted with his union, and 4) he complained about sexual harassment. (Doc. 22 at 9). Of those four categories, only the fourth would be actionable as a Title VII retaliation claim. He goes on to allege that the retaliation he suffered was Keystone's failure to give him overtime, allowing the re-entry employees to harass him because he discussed Keystone's unsafe labor practices, forcing him to work excessive overtime, and finally "falsif[ying] progress reports to

---

[2] Incidentally, this Court's review of current case law reveals that sexual orientation is not a protected class under Title VII anyway. *See Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 706-07 (7th Cir. 2000).

11

cover-up extending his probation and their wrongful termination plot." (Doc. 22 at 9-10). Because he is a *pro se* litigant, the Court construes the Plaintiff's allegations liberally. *See Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). A liberal reading of the Amended Complaint, supplemented with the narration of facts in the response brief, supplies the Court with a scenario in which Keystone allegedly extended Plaintiff's probation and then terminated him due to his complaints of sexual harassment as well as the other non-Title VII related reasons.

Defendants cite *University of Texas Southwest Medical Center v. Nassar*, 133 S. Ct. 2517 (U.S. 2013) for the proposition that the Plaintiff's retaliation claim must fail because in that case the Supreme Court announced that Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action. (Doc. 18 at 9-10). Obviously, Plaintiff alleges he was retaliated against for a host of reasons, only one of which relates to Title VII protected activity.

Although not cited by the Defendants, the Court has researched a few opinions in which courts have applied the *Nassar* holding to retaliation pleading standards. For example, in *Montgomery v. Board of Trustees of the University of Alabama*, a district court found that *Nassar* had the effect of requiring a plaintiff alleging a claim of retaliation under Title VII to make it perfectly clear in his pleading that there are no proscribed motivations other than an intent to retaliate for engaging in protected activity under Title VII. No. 2:12-CV-2148-WMA, 2015 WL 1893471, at *5 (N.D. Ala. Apr. 27, 2015). *See also Conner v. Ass'n of Flight*

*Attendants-CWA*, No. CIV.A. 13-2464, 2014 WL 6973298, at *3 (E.D. Pa. Dec. 10, 2014) (a "complaint must demonstrate on its face that it is plausible that [the plaintiff] will be able to prove that 'but for' [defendant]'s retaliatory motive, [the plaintiff] would not have been terminated."), Lance v. Betty Shabazz Int'l Charter Sch., No. 12 CV 4116, 2014 WL 340092, at *8 (N.D. Ill. Jan. 29, 2014) (to survive a motion to dismiss, plaintiff must advance a well-pled allegation that the defendant would not have fired him "in the absence of—that is, but for" engaging in the protected activity).

This Court sees the logic in those courts' reasoning, which is that if one must prove something at trial then a plausible claim should at least contain allegations that that thing will be proven. The problem with adopting that logic though is that, at least in this Court's opinion, doing so would adopt a more rigorous requirement than the pleading standard provided in Federal Rule of Civil Procedure 8(a).

"To satisfy the notice pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must merely provide a short and plain statement of the claim, which is sufficient to give the defendant fair notice of what the ... claim is and the grounds upon which it rests. *Smith*, 803 F.3d at 309 quoting *Twombly*, 550 U.S. at 555 (quotation marks omitted). A complaint need only contain enough facts to make the claim plausible. *Id*. All a plaintiff need plead for a retaliation claim is that he was engaged in statutorily protected activity and was subjected to an adverse employment action as a result. *Carlson*, 758 F.3d at 828.

While *Nassar* does state Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action to ultimately succeed, that holding was made in consideration of what must be proven at a jury trial; there does not seem to be a principled reason to extend that holding to what must be pled to survive a motion to dismiss. 133 S. Ct. at 2533. In fact, neither *Carlson*, 758 F.3d 819 nor *Luevano*, 722 F.3d 1014—the Seventh Circuit cases this Court cited for the pleading requirements of a viable Title VII retaliation claim—make any mention of alleging that retaliation was the but-for cause of the challenged employment action as a pleading requirement. Both those cases were decided after *Nassar*. For these reasons, the Court declines to find that *Nassar* requires a plaintiff to affirmatively plead but-for causation.

The problem with Plaintiff's allegations is not that they are <u>insufficient</u> to show he may be entitled to relief. The problem is that he has pled too much, so much so that he establishes that he cannot prove his claim. "[I]f the plaintiff chooses to provide additional facts, beyond the short and plain statement requirement, the plaintiff cannot prevent the defense from suggesting that those same facts demonstrate the plaintiff is not entitled to relief. In other words, if a plaintiff pleads facts which show he has no claim, then he has pled himself out of court." *McCready*, 453 F.3d at 888.

Complaining of sexual harassment, even when the conduct one complains of does not actually amount to sexual harassment, can provide an adequate basis for a viable Title VII retaliation claim. *See Holland v. Jefferson Nat'l Life Ins. Co.*, 883

F.2d 1307, 1314 (7th Cir. 1989) ("In order for plaintiff's expression to be protected by section 2000e–3(a), the challenged practice need not actually violate Title VII. Instead, it is sufficient if the plaintiff has a reasonable belief she is challenging conduct in violation of Title VII."). Yet Plaintiff alleges his retaliation was the result of not only complaining about sexual harassment, but also for a host of non-Title VII related reasons, such as complaining about overtime, complaining about the preferential treatment of the re-entry employees, complaining about unsafe working conditions and labor practices. A complaint's well-pleaded factual allegations must be taken as true and the Court will not parcel out which of the factual allegations it will take to be true to dispose of the motion to dismiss.[3]

*Nassar* unambiguously holds that a retaliation claim requires a plaintiff to prove that the retaliation he suffered was due to his engaging in protected activity under Title VII. While this Court declines to find *Nassar* requires an affirmative pleading of but-for causation, it cannot simply ignore that Plaintiff's allegations, taken as true, torpedo a finding of but-for causation. Therefore, the Court also grants the Defendant's motion in regard to the retaliation claim.

---

[3] *See* Brian S. Clarke, *Grossly Restricted Pleading: Twombly / Iqbal, Gross, and Cannibalistic Facts in Compound Employment Discrimination Claims*, 2010 Utah L. Rev. 1101, 1120 (2010) ("[The] assumption of truth rule leaves no room for a lower court to pick and choose which pleaded facts to accept as true; it must accept them all, regardless of the consequences to the pleader. If pleaded facts are inconsistent with one of the claims in the complaint and, taken as true, render that claim implausible, then that claim must be dismissed under Twombly/Iqbal, regardless of whether the inconsistent facts support a different claim in the complaint.").

## VI.   Concerted Activity

Plaintiff unambiguously requests this Court to review the NRLB General Counsel's decision to dismiss his complaint because it "could have been [] based upon [some other standard than] the preponderance of the evidence that was discovered in the documentations submitted during the EEOC's investigation." (Doc. 22 at 10). He contends the decision is at odds with the evidence. This claim is frivolous. The Seventh Circuit has explained that "[o]verwhelming case authority establishes that a decision by the General Counsel of the Labor Board not to file an unfair labor practices complaint is not judicially reviewable." *Sparks v. N.L.R.B.*, 835 F.2d 705, 706 (7th Cir. 1987). Therefore, this claim for "concerted activity" is dismissed because it seeks relief that cannot be granted.

## VII.   Remaining State Law Claims

The Court expresses no judgment as to the propriety of Plaintiff's remaining Illinois state law claims—tortious interference with contractual relations, defamation, and intentional infliction of emotional distress—because the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).

### CONCLUSION

Defendants' Joint Motion To Dismiss Plaintiff's Pro Se Civil Rights Amended Complaint (Doc. 18) is GRANTED. When a court dismisses a claim pursuant to a Rule 12(b)(6) motion, the dismissal must be with prejudice because the claim is not one upon which relief can be granted. *Remijas v. Neiman Marcus Grp., LLC*, No. 14-

3122, 2015 WL 4394814, at *8 (7th Cir. July 20, 2015) ("A dismissal under Rule 12(b)(6), in contrast, is a dismissal with prejudice."); *Kamelgard v. Macura*, 585 F.3d 334, 339 (7th Cir. 2009). Plaintiff has already had two opportunities to plead facts demonstrating he is entitled to the relief he seeks, a third opportunity is unwarranted. Therefore, the Amended Complaint (Doc. 16) is dismissed with prejudice and the Court declines to exercise its supplemental jurisdiction to adjudicate the Illinois state law claims contained therein. CASE TERMINATED.

IT IS SO ORDERED.

Entered this 10th day of December, 2015.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
